IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ZACK JONES,                                          Case No. 3:23-cv-01301-JR

       Plaintiff,                                     FINDINGS AND
                                                    RECOMMENDATION
   v.

TARGET CORPORATION,

       Defendant.

_____

RUSSO, Magistrate Judge:

      Pro se plaintiff Zack Jones brings this action against defendant Target Corporation related to an alleged incident of coworker sexual harassment that occurred in the employee breakroom in May 2023. Defendant now moves for terminating sanctions pursuant to Fed. R. Civ. P. 37 or, alternatively, Fed. R. Civ. P. 41. For the reasons set forth below, defendant's motion should be granted and this case dismissed.

Page 1 – FINDINGS AND RECOMMENDATION

## DISCUSSION

In July 2023, plaintiff commenced this action in Multnomah County Circuit Court alleging: (1) sexual harassment; (2) negligence; (3) intentional infliction of emotional distress; (4) spoliation of evidence; (5) retaliation; (6) failure to preserve evidence; and (7) civil conspiracy. In September, defendant timely removed plaintiff's complaint to this Court and sought dismissal under Fed. R. Civ. P. 12(b)(6). In December, the Court granted defendant's motion. *See generally Jones v. Target Corp.*, 2023 WL 9065120 (D. Or. Nov. 17), *adopted by* 2023 WL 8947922 (D. Or. Dec. 28, 2023). Since that time, defendant has come forth with evidence reflecting that "ZACK JONES is an alias for MUHAMMED-FARUQ OLUWASEYI ADEYOJU SOYEGE."[1] Falcone Decl. Ex. 12, at 1 (doc. 124-1).

In January 2024, plaintiff filed his First Amended Complaint, alleging the same seven claims as his initial complaint (although his negligence and retaliation claims proceeded under different legal theories), as well as adding a claim under the Oregon Workplace Fairness Act. The following day, plaintiff lodged his third discovery motion.

---

[1] Defendant first raised this issue as part of the objections process to its initial Rule 12(b)(6) motion. *See* Falcone Decl. ¶ 2 (doc. 17) (attaching "true and correct copies of two complaints filed in the Multnomah County Superior Court on a pro se basis by a litigant with the exact same contact information as the plaintiff in the instant case [under] the name 'Muhammed Soyege'"); Falcone Decl. Ex. 3 (doc. 17-3) (state court filing identifying "Muhammed Soyege" and "Zack Jones 'Pro Se'" as the same person). District Judge Simon addressed the matter in his December 2023 order, instructing plaintiff that he must proceed under his legal name pursuant to Fed. R. Civ. P. 17. Order 5-6 (Dec. 28, 2023) (doc. 23). Plaintiff thereafter represented to the Court, under penalty of perjury, that his "legal name is Zack Jones." Jones Decl. ¶ 2 (doc. 24-2); Jones Decl. ¶ 2 (doc. 42). Since that time, defendant has submitted additional evidence reflecting that plaintiff and "Muhammed Soyege" are indeed the same person (and intimating that "Muhammed Soyege" is plaintiff's legal name), including medical records, police reports, and Multnomah County criminal proceedings. *See, e.g.*, Falcone Decl. Exs. 1-2 (doc. 39-1); Falcone Decl. Exs. 8-10 (doc. 124-1); Falcone Decl. Ex. 12, at 1 (doc. 124-1); Mao Decl. Ex. 4, at 8-11 (doc. 153-1).

On February 6, defendant moved for dismissal in regard to the First Amended Complaint. That same day, plaintiff indicated to opposing counsel that he would be available for an in-person deposition in March 2024. Falcone Decl. ¶ 2 (doc. 64).

On February 12, the Court denied plaintiff's discovery motion, with leave to renew, for three reasons:

> First, plaintiff's motion fails to comply with Local Rule 7-1(a)(1), as there is no indication that he conferred with defendant and a certification statement is absent. *See* LR 7-1(a)(3) ("[t]he Court may deny any motion that fails to meet this certification requirement"); *see also Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1132 n.7 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("pro se plaintiffs must comply with the local rules") (citation and internal quotations omitted). Plaintiff has repeatedly been instructed that he must act in accordance with the Local Rules, including Local Rule 7-1. Second, defendant represents that, to date, plaintiff "has not properly served any discovery" since "Target has never agreed to electronic service as required to authorize it under Federal Rule of Civil Procedure 5(b)(2)(E)." Def.'s Resp. to Mot. Compel 8 (doc. 29). Finally, defendant has moved to dismiss plaintiff's amended complaint pursuant to FRCP 12(b)(6), such that the pleadings are unsettled and the claims proceeding to discovery are undetermined. Any future discovery motions must comply with the Federal and Local Rules.

Order (Feb. 12, 2024) (doc. 32); Order (Feb. 28, 2024) (doc. 37).

On April 1, the Court issued a Findings and Recommendation specifying that defendant's Rule 12(b)(6) motion should be denied as to the First Amended Complaint's sexual harassment claim. *See generally Jones v. Target Corp.*, 2024 WL 1747326 (D. Or. Apr. 1, 2024), *adopted by* 2024 WL 1741117 (D. Or. Apr. 23, 2024).

On April 22, plaintiff filed a renewed Motion to Compel – seeking discovery related to his Requests for Production ("RFP"), sanctions, and attorney fees – based on the pending Findings and Recommendation. The following day, District Judge Simon adopted the Findings and Recommendation, allowing the amended complaint's sexual harassment claim to go forward, as

well as granting plaintiff leave to file a Second Amended Complaint in regard to certain other claims.

On May 14, the Court resolved plaintiff's renewed discovery motion as follows:

[P]laintiff's motion is now in its fourth iteration (not including objections) – in other words, the parties have repeatedly briefed (and, in some instances, communicated regarding) many of the same issues currently before the Court. Given the protracted briefing in this case, coupled with the fact that it is clear from the record that conferral is not likely to resolve the parties' dispute, the Court finds a decision on the merits is warranted and therefore declines, in its discretion, to deny plaintiff's motion [under LR 7-1(a)]. Concerning defendant's second argument, plaintiff has a claim currently pending. And, while defendant's objections to plaintiff's RFP do raise certain relevancy concerns, most of those emerge in the context of there being "no at-issue claims pending Target's Motion to Dismiss." Falcone Decl. Ex. 2, at 4 (doc. 48-1). Accordingly, at a minimum, there does not appear to be any meaningful dispute surrounding whether plaintiff is entitled to any existing video footage from the Employee Break Room security camera from 5/26/2023 between 2p.m. and 3p.m., as well as video footage capturing the entry and exit points to the Employee Break Room from 5/26/2023 between 2p.m. and 3p.m. In sum, given that plaintiff has now alleged a viable claim and the discovery sought relates thereto, plaintiff's motion is granted insofar as defendant is ordered to update its responses to plaintiff's RFP and produce discovery that falls within the ambit of Fed. R. Civ. P. 26(b). However, plaintiff's request for sanctions and attorney fees is denied, as the record does not evince the existence of any behaviors on defendant's behalf that would warrant such an extreme remedy at this stage in the proceedings.

Order (May 14, 2024) (doc. 49).

On May 20, plaintiff filed a Motion for Clarification seeking "a compliance deadline for the Defendant to produce the requested discovery." Pl.'s Mot. Clarification 2-3 (doc. 50). In conjunction with his motion, plaintiff included a "Proposed Order" listing 21 categories of discovery materials (12 of which were not part of his original RFP), as well as a request for sanctions and attorney fees.

On May 29, during a discovery planning conference, plaintiff "stated that he would not agree to an in-person deposition and he would not agree to being videotaped because of his 'personal spiritual beliefs.'" Falcone Decl. ¶ 5 (doc. 64).

On June 2, plaintiff moved for the imposition of sanctions, attorney fees, and default because defense counsel had purportedly been "rude and uncooperative" during a recent telephone conference and had not produced all relevant discovery.

On June 6, the Court granted in part and denied in part plaintiff's Motion for Clarification, and denied plaintiff's Motion for Sanctions. Specifically, the Court explained that it "cannot compel production in relation to the 12 categories of new information (and the expansions of items 4-5, 10, and 19) articulated in the Proposed Order because they were not a part of his original RFP or the May 14 Order." Order 6 (June 6, 2024) (doc. 55). The Motion for Clarification was thus granted insofar as defendant was ordered to update all of its responses to plaintiff's original RFP and produce any discoverable information within 10 days. Plaintiff's second amended complaint was then due 14 days after production was complete.

Concerning sanctions, the Court resolved:

> [They] are not appropriate at this juncture. Plaintiff has not demonstrated any conduct that is thus far outside the parameters of an adversarial system. Motions take time to respond to and resolve, the Federal and Local Rules require certain processes, and opposing counsel has a duty to zealously represent its client. These facts, while certainly frustrating at times, do not amount to an abuse of the discovery process or unprofessional conduct.

*Id.* at 7. In so finding, the Court noted "arguments are not evidence" and that plaintiff neglected "to provide a declaration or affidavit in conjunction with his request for sanctions detailing Ms. Falcone's purportedly improper behavior, and his motion itself is vague in its descriptions." *Id.* at 7 n.3 (citing *Carrillo-Gonzalez v. Immigr. & Naturalization Servs.*, 353 F.3d 1077, 1079 (9th Cir. 2003)). The Court concluded by reiterating LR 7-1(a)'s conferral requirement and encouraging the parties "to work together to resolve any future discovery disputes or case-related conflicts in lieu of seeking Court intervention, which is both costly and time consuming." *Id.* at 5-8.

On June 11, defendant served a videotaped deposition notice for plaintiff set for July 19, 2024, in Portland, Oregon. The following day, plaintiff filed a Motion for Protective Order, requesting, in relevant part, that the Court order defendant to depose him remotely, as he was "currently in Africa for medical surgeries." Pl.'s Mot. Prot. Order 2 (doc. 56).

On June 17, plaintiff lodged his "Sixth Motion to Compel Discovery, Request for Sanctions, and Default Judgment," again seeking "break-room surveillance footage, "inspection of employee's break-room security camera and asset protection office," "burned disc of employee's break-room footage," "asset protection personnel information," "depositions of relevant personnel," "management and employee information," and "technical department supervisor contact." Pl.'s Sixth Mot. Compel 7-8 (doc. 58). Defendant then contacted the Court requesting a telephonic discovery conference to resolve disputes surrounding plaintiff's interrogatories to nonparty witnesses and deposition notice to CEO Brian Cornell, and failure to serve his Rule 26 Initial Disclosures.

Oral argument was held on July 16 during which plaintiff specified he was "in Saudi Arabia." Hearing Transcript 5 (doc. 80). The Court granted defendant's email requests (except as to plaintiff's Rule 26 Initial Disclosures, which he served prior to the hearing). The Court denied plaintiff's Motion for Protective Order because he "previously served discovery as well as other documents on defendant via email without first obtaining defendant's written consent to that method of service [and] defendant now has six prior written requests to the plaintiff, requesting that both counsel for defendant be included in emails; however, plaintiff continues to fail to adhere to that request." *Id.* at 4-5. And "perhaps most importantly, [there is no] rule or precedent that requires defendants to give express consent to service by email." *Id.* at 5. The Court also denoted:

> [Plaintiff] initiated this action in Portland, where, presumably, [he] continue[s] to reside [and] there's no assertion in the record that travel from [his current location]

would cause any undue burden . . . nothing in the record [establishes] that plaintiff's medical condition would in any way prevent his travel to Portland to appear for his deposition. And, again, that is the forum of his choice. In fact, it is notable that plaintiff states he affirmatively intends to return to Portland in order to conduct his own discovery . . . [defendant has also] carried its burden to make a particularized showing that conducting the deposition remotely would be prejudicial [because plaintiff's] credibility is critical in this case.

*Id.* at 5-6, 8. Accordingly, the Court ordered plaintiff "to appear for a deposition in person, but that deposition will not take place until the plaintiff returns to the country at the conclusion of his medical appointments."[2] *Id.* at 12.

Concerning plaintiff's "Sixth Motion to Compel Discovery, Request for Sanctions, and Default Judgment," the Court stated:

This motion is denied. The Court relies on defendant's representation to this Court that it has fully complied with this Court's June 6, 2024, order concerning discovery production. Mr. Jones, it remains concerning that you, once again, failed to confer with the defendant, and that failure is in direct violation of both the local rules and this Court's express order prior to filing this motion; and, frankly, this reason alone is a sufficient legal basis to deny your motion. However, regarding your request for sanctions, again, I will note plaintiff's failure to provide the Court with any specific descriptions of counsel's allegedly improper behavior . . . Target cannot produce what it does not have, video footage which does not exist and has never existed.[3] Target has identified all asset protection employees and the store manager at its North Tomahawk Island Drive store who were involved in investigating plaintiff's complaint about an alleged incident in the break room.

*Id.* at 8-9, 16. In conclusion, the Court extended the case management deadlines.

---

[2] Plaintiff confirmed at the hearing that he intended to return to Portland "sometime in September." Hearing Transcript 10 (doc. 80). In a separate state court lawsuit, "Muhammed Soyege" filed a letter, dated March 14, 2024, from "Dr. Henok Mekasha (MD, Consultant Neurosurgeon)," located in Ethiopia, stating: "Mr. Soyege has a series of medical appointments and multiple surgeries scheduled from March 26 through August. We anticipate these necessary treatments will conclude in late August; at which time Mr. Soyege should be fit to return." Falcone Decl. Ex. 4, at 16 (doc. 150-1).

[3] Defendant specified under penalty of perjury that there was never any video footage of the incident because the breakroom camera is a non-operational "dummy" camera. Wardman Decl. ¶¶ 2-6 (doc. 68).

Plaintiff filed objections to the Court's discovery order, along with a "Seventh Motion to Compel Discovery and Request for Sanctions," seeking essentially the same scope of evidence as his prior discovery motions.

On August 14, defendant properly noticed plaintiff's in-person videotaped deposition for October 24, 2024.

On August 19, the Court resolved plaintiff's pending motion as follows:

> Plaintiff's Seventh Motion to Compel and Request for Sanctions is Denied. Plaintiff has propounded three [RFPs] in the course of this lawsuit. The First RFP has been the subject of several prior motions and orders. As stated on the record at the 7/16/2024 Hearing, the Court finds that defendant has adequately complied with the First RFP. To the extent the Second and Third RFPs are duplicative of the First RFP, plaintiff's motion is denied for the reasons previously identified. Regarding non-duplicative requests, defendant's objections appear to be well-taken. Namely, plaintiff does not identify the documents he is seeking with reasonable specificity, or describe how defendant's objections are inapt. In other words, several of plaintiff's requests are overbroad and vague, and he has otherwise failed to carry his burden in demonstrating that such evidence is relevant and proportional in light of his sole claim for co-worker sexual harassment. Finally, as noted in the 6/6/2024 Order, "the Court cannot compel production in relation to . . . new information [sought via a motion to compel] because [it was] not a part of his original RFP." Order 6 (June 6, 2024) (doc. 55); *see also* *Coleman v. Cal. Dep't of Corr. & Rehab.*, 2016 WL 6038193, *9 (E.D. Cal. Oct. 13, 2016) ("defendants aver that plaintiff did not seek such discovery in any of his discovery requests . . . [a plaintiff] cannot obtain a court order compelling responses to a request not tendered"). The Court will summarily deny any future discovery motions that pertain to information covered by the First RFP.

Order (Aug. 19, 2024) (doc. 79).

On August 21, Judge Simon overruled plaintiff's objections to the Court's order denying his request to authorize electronic service.

On September 4, plaintiff lodged objections to the Court's order denying his "Seventh Motion to Compel Discovery and Request for Sanctions."

On September 9, plaintiff filed yet another discovery motion, entitled "First Motion for Default," based on defendant's purported failure to "produce break-room security footage,"

"provide a list of employees and managers present during the incident," and allow "access to inspect security systems and relevant documents." Pl.'s Mot. Default 5-6 (doc. 84). On September 13, the Court denied the motion: "The Court notes that plaintiff's motion concerns information sought via his First and Second [RFPs], which have been the subject of several prior motions and orders . . . The Court notes further that there is no current order compelling the production of any discovery, such that sanctions under Fed. R. Civ. P. 37(b) are inapposite." Order (Sept. 9, 2024) (doc. 85). On September 22, plaintiff filed objections to that Order.

On September 23, Judge Simon overruled plaintiff's objections to the Court's Order denying his "Seventh Motion to Compel Discovery and Request for Sanctions." That same day, plaintiff timely lodged his Second Amended Complaint. On October 15, Judge Simon overruled plaintiff's objections to the Court's Order denying his "First Motion for Default."

On October 20, plaintiff filed a Motion for Interlocutory Appeal, as well as his "Eighth Motion to Compel Discovery and Request for Sanctions," requesting "[f]ull inspection access to the breakroom, AP personnel office, and security camera system"; "[c]omplete and accurate lists of employees, AP personnel, and management present during the day of the incident"; and "[t]echnical information regarding the security camera system and its operability on the day of the incident." Pl.'s Eighth Mot. Compel 5 (doc. 96).

On October 21, the Court denied plaintiff's "Eighth Motion to Compel Discovery and Request for Sanctions" for the reasons previously stated on the record. Plaintiff raised objections to that Order the same day.

In the weeks leading up to plaintiff's deposition, defendant repeatedly sought confirmation of attendance. Plaintiff did not respond until October 23, when he informed defendant that he could "not attend the deposition due to medical procedures." Mao Decl. Ex. 14 (doc. 116-1). Defendant

asked plaintiff to produce documentation from a healthcare provider to support this representation. Plaintiff did not respond to that request or produce any further information or documentation and, on October 24, he failed to appear for his deposition. Defendant noted plaintiff's non-appearance on the record. Mao Decl. Ex. 16 (doc. 116-1).

On November 14, Judge Simon denied plaintiff's Motion for Interlocutory Appeal, but granted plaintiff's objections in part – i.e., compelling defendant to allow plaintiff a site inspection of the subject breakroom and "dummy" camera at the Target located at 1555 N. Tomahawk Island Drive, Portland, Oregon – noting: "At the July hearing, Judge Russo discussed with apparent approval that Plaintiff may engage in a site visit [which] is reasonable, particularly given Defendant's contention that the camera in the breakroom is a 'dummy' camera." Order 6 (Nov. 14, 2024) (doc. 108). Judge Simon, however, denied plaintiff's remaining discovery requests. Plaintiff sought reconsideration of that order, which Judge Simon denied.

During December, plaintiff filed his "First Motion to Compel Production and Answers for RFP 2, RFP 3, and Interrogatories" and "Motion to Compel Compliance with Court Order and for Sanctions," and defendant lodged its "Motion to Compel Plaintiff's Discovery and Request for Sanctions." In particular, plaintiff sought "inspection of break rooms and surveillance systems," "[i]dentifying [information for] employees who were present during the incident," and "surveillance logs and metadata" related to defendant's security cameras. Pl.'s Ninth Mot. Compel 6 (doc. 113). Additionally, plaintiff requested a court order compelling defendant to schedule "definitive dates for the [site] inspection," permit "a third party to conduct the inspection on Plaintiff's behalf," and provide "additional information to prepare for the inspection." Pl.'s Tenth Mot. Compel 2 (doc. 119).

Defendant, in turn, sought an "order [requiring] Plaintiff to comply with his discovery obligations" since he had "not produced a single document in discovery," "failed to comply with Federal Rule of Civil Procedure 26 disclosure requirements," and "failed to appear for his properly noticed deposition in October 2024." Def.'s Mot. Compel 2 (doc. 115). According to defendant, plaintiff was not responsive to any of its requests to confer about outstanding discovery and refused to communicate "with Target's counsel as to when he can appear in person for his deposition." *Id.* at 7.

On January 13, 2025, the Court issued an order denying plaintiff's motions, and granting in part and denying in part defendant's motion. As a preliminary matter, the Court stated:

> intervention has been repeatedly sought in this case, largely due to plaintiff's apparent misunderstandings surrounding the discovery process, which have resulted in copious filings, a lack of responsiveness to defendant's requests, and a failure to meaningfully confer in accordance with Local Rule 7-1(a). Although defendant was initially cautioned not to use plaintiff's pro se status as a shield to avoid making disclosures and producing evidence within the purview of Fed. R. Civ. P. 26(b), and plaintiff has obtained limited relief in relation to two of his motions, his conduct (especially as this case has moved forward) has bordered on indecorous and has only served to unnecessarily prolong these proceedings. Thus, while the Court declines to impose sanctions at this time due to plaintiff's pro se status (and what the Court presumes is a corresponding good faith misapprehension of the rules and standards governing federal litigation), the Court cautions plaintiff that it will impose sanctions should he continue down the same path.

Order 10-11 (Jan. 13, 2025) (doc. 127) (citations and internal quotations omitted).

Turning to defendant's motion, the Court noted it had "previously ruled that: (1) plaintiff must make himself available for an in person deposition; and (2) vague assertions of medical treatment do not qualify as a legitimate reason for a remote deposition in this context." *Id.* at 12. The Court observed further:

> While plaintiff contends he is overseas obtaining medical treatment, he does not assert that travel would cause an undue burden (in fact, he continues to express an intent to return to Portland to conduct his own discovery). And plaintiff still fails to provide any declaration or other evidence providing details, or even basic

information, about his circumstances . . . Even presuming plaintiff made the requisite foundational showing, as discussed at the July 2024 hearing, defendant has demonstrated prejudice.

Finally, contrary to plaintiff's assertion, defendant's discovery requests are not overbroad or irrelevant. Stated differently, the discovery sought is largely focused on plaintiff's employment at defendant's North Tomahawk Island store in May 2023 and periods subsequent thereto with respect to the considerable economic and noneconomic damages that are claimed in this case. The remaining requests are aimed at plaintiff's identity, as there is a genuine question in the record before the Court whether "Zack Jones" is the real party of interest in this case pursuant to Fed. R. Civ. P. 17 and, by extension, whether plaintiff may have misrepresented himself in maintaining that "Zack Jones" is his legal name.

*Id.* at 12-13 (internal quotations omitted).

Regarding plaintiff's assertions of "doctor-patient" privilege, the Court denoted "no such general privilege exists" and that "the identities of any licensed psychotherapists or social workers consulted by a plaintiff, as well as the dates of any such consultations, are not privileged." *Id.* at 13-14 (citations and internal quotations and emphasis omitted). As a result, the Court found that "the contact information for 'Nathan Feleke, MD,' plaintiff's treating mental health provider and 'psychiatrist,' is also not privileged." *Id.* at 14. However, the Court conditionally denied defendant's request for production of "Feleke's treatment records" because it could "not finally determine . . . whether plaintiff has waived any psychotherapist-patient privilege," as plaintiff did "not provide sufficient information to determine whether Feleke is a qualifying licensed medical professional" and there was otherwise no information reflecting whether plaintiff intended "to rely on Feleke as an expert witness at trial or . . . make his communications therewith central to his claim for emotional distress damages." *Id.* at 14-15.

Concerning plaintiff's motions, the Court noted his lack of meaningful compliance with LR 7-1(a), as well as the fact that "plaintiff has already been granted inspection of the break room at the North Tomahawk Island Drive store," and his other requests had been repeatedly litigated

and denied. *Id.* at 15-17. The Court also remarked that that record reflected "defendant has responded to plaintiff's scheduling requests," and further "represent[ed] it will fully comply with this Court's order to permit a site visit by Plaintiff," such that there did not appear to be any basis for an order compelling compliance. *Id.* at 18 (citations and internal quotations omitted).

The Court concluded by providing plaintiff with specific instructions concerning upcoming steps in this case, should he wish to continue litigating his claims:

> [Plaintiff is] ordered to appear in person for his deposition before any site inspection or the deposition of any defense witness; the parties shall meet and confer, in good faith, about a mutually agreeable date . . . Plaintiff, not an unnamed third party, must conduct the site visit in a single occurrence, which is limited to the employee breakroom and the "dummy" camera dome therein . . . Plaintiff is also ordered to serve complete written discovery responses and supplement his Rule 26 disclosures within 30 days. That disclosure shall include, but is not limited to: (1) sufficient information related to Nathan Feleke to determine whether he is a licensed medical professional, such as his practice area, place of work, medical license number, etc.; (2) the identities of any other licensed medical providers, such as physicians, psychotherapists, or social workers, plaintiff consulted after and including May 26, 2023, and the dates of any such consultations; and (3) whether plaintiff intends to call any licensed psychotherapist (whether treating or non-treating) or other similar expert witness to opine on his emotional injuries at trial, or intends to reveal during his own trial testimony confidential communications with any such professional.

*Id.* at 19.

Plaintiff then filed objections as well as a "Writ of Mandamus," which were rejected by Judge Simon and the Ninth Circuit, respectively. Notably, Judge Simon emphasized the lack of evidence supporting plaintiff's contentions surrounding the need for overseas medical treatment. Judge Simon also considered plaintiff's contention "that Judge Russo is biased":

> This is in essence seeking to reverse Judge Russo's order on the same grounds as one would evaluate a motion to recuse or disqualify a judge. Plaintiff, however, bases this objection on Judge Russo's rulings in this case [but] any alleged personal bias or prejudice of a judge must result from an extrajudicial source, not from any prior adverse ruling by that judge.

*Jones v. Target Corp.*, 2025 WL 418979, *2 (D. Or. Feb. 5, 2025).

Plaintiff thereafter filed a Motion for Reconsideration, which Judge Simon denied, and also sought a 60-day "extension of time to respond to discovery requests and supplement his Rule 26 disclosures as required by the Court's order" and an order authorizing his remote deposition due "to ongoing medical treatments . . . in the Middle East." Pl.'s Mot. Ext. Time 1, 3 (doc. 135); Pl.'s Mot. Prot. Order 1 (doc. 136). Because plaintiff's motions did not detail the nature of his medical condition or need for treatment, plaintiff was instructed to "file a supplemental brief: (1) producing particular and specific proof of undue burden or expense – e.g., documentation from a healthcare provider about his medical condition and how it impedes his ability to participate in this lawsuit in a timely manner and travel; and (2) indicating when he intends to return to the United States to conduct the site inspection of the breakroom camera at defendant's Tomahawk Island Drive store." Order (Feb. 18, 2025) (doc. 138).

On February 27, 2025, plaintiff submitted a declaration appending as Exhibit A a "letter from [his] attending physician, Dr. Goher." Pl.'s Suppl. Br. 2 (doc. 141). This letter contained a "Care Swahili Hospital" heading along with hospital contact information, including an email address – i.e., carehospital@gmail.com – and asserted:

> My name is Dr. A. Goher, a licensed physician specializing in primary health care as a general practitioner at Care Hospital in Sahiwal Pakistan. I am writing regarding my patient, Mr. Jones, and concerns over not being able to travel currently.
>
> Mr. Jones initially presented with lower back pain and persistent chest discomfort, which he reported has caused a lot of pain. Upon further examination, imaging, and diagnostic tests, we identified the following conditions that necessitate specialized medical intervention:
>
> **Lumbar Spine Condition:**
> -Mr. Jones experiences radiating pain in his lower back, consistent with possible herniated disc and sciatica.

**Cardiac Concerns:**
-Mr. Jones has reported episodes of chest pain and shortness of breath. Cardiac evaluations revealed indications of foreign body within the thoracic cavity,[4] requiring close monitoring and potentially heart surgery (e.g., valve repair, bypass, foreign body removal) if test results confirm surgical necessity . . . Until at least mid-June 2025, I strongly advise Mr. Jones not to embark on long-distance or international travel to ensure proper healing and avoid jeopardizing the surgical outcomes. I will continue to monitor Mr. Jones's condition closely and can provide periodic updates on his status as needed.

Jones Decl. Ex. A (doc. 141-1). The letter was signed "Dr. Amin Goher (CONSULT)," and listed

a number of partially obscured credentials, including "Orthopedic Surgeon." *Id.*

Defendant opposed plaintiff's motions on the ground that he has not demonstrated the

requisite good cause: "After almost two years of litigation, Plaintiff still has not produced a single

document in discovery or served complete responses to Target's written discovery served nine

months ago [and his] supplemental briefing offers no explanation as to why his supposed medical

condition and alleged inability to travel preclude him from responding to Target's written

discovery requests." Def.'s Resp. to Suppl. Br. 9 (doc. 149). Separately, defendant contended

"[t]he veracity of [plaintiff's] claim of medical impairment and inability to travel is suspect, to say

the least":

Counsel for Target has not located any medical provider by the name of Dr. Amin Goher at Care Hospital Sahiwal. "Dr. Amin Goher" was not disclosed by Plaintiff in his Rule 26 Disclosures, nor did he produce any documents evidencing treatment or consultation by "Dr. Goher" or in Pakistan at the "Care Hospital Sahiwal" . . . Exhibit A is not admissible in evidence because it is unsupported by any declaration from "Dr. Goher," nor does Plaintiff himself lay a proper foundation to authenticate it . . . In July 2024, Plaintiff represented to this Court that he was receiving medical treatment in Saudi Arabia. He has now apparently traveled to, and received treatment from, providers located thousands of miles away in Pakistan and Ethiopia. Aside from Gmail addresses purportedly belonging to "Dr. Goher" and

---

[4] One of plaintiff's state court lawsuits alleges that, in May 2023, a Legacy Health doctor "stabbed" a "metal rod into [his] chest wall" during a procedure to remove a "foreign body [in] his left thoracic cavity," thereby pushing the "foreign body . . . into his heart." Falcone Decl. Exs. 1-2 (doc. 39-1).

"Dr. Feleke," Plaintiff provides no other contact information for these people or any other medical providers. Anyone can set up a Gmail account under any name.

*Id.* at 7, 10-11, 14 (internal citations omitted).

As such, defendant requested that the Court either: "(1) dismiss this case based on Plaintiff's failure to comply with the Court's orders, which amounts to failure to prosecute, or (2) continue the deadlines set in the scheduling order only to the extent that they require Plaintiff to comply with his discovery obligations within the next two weeks, including: (a) sitting for his in-person deposition in Portland, Oregon; (b) serving complete responses to Target's written discovery requests; (c) supplementing his Rule 26 disclosures such that they are complete and fulsome; and (d) producing all documents responsive to Target's discovery requests." *Id.* at 10.

On March 5, plaintiff filed his second motion for Motion for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b).

The Court thereafter attempted to schedule a telephonic hearing in order garner additional information from plaintiff surrounding his legal name, state court filings, and medical treatment, but plaintiff responded: "I am not requesting a hearing. I do request that the current magistrate judge recuse herself from this case and allow a new non-biased magistrate judge onto the case. [Even if] she does not recuse herself [an] order can be made without a hearing." Pl.'s Email  (Mar. 26, 2025).

On April 2, the Court issued an Order denying plaintiff's requests for recusal and a remote deposition, but otherwise granting him an extension of time to comply with his discovery obligations. Concerning sanctions and ongoing discovery issues, the Court explained:

> [T]he Court previously ordered plaintiff to serve complete written discovery responses and supplement his Rule 26 disclosures within 30 days, and sit for an in-person deposition. Assuming Dr. Goher's letter demonstrates a legitimate reason for plaintiff to seek a remote deposition . . . serious credibility concerns remain. Furthermore, plaintiff's most recent filing from March 24, 2025, reflects that he

continues to reside at a Portland, Oregon, address. As a result, any trial would
necessarily take place in person, in the Portland Division. In other words, plaintiff
cannot forestall a merits determination in this case by indefinitely extending his
return to the United States (especially considering that he has been able to travel
without apparent issue between Ethiopia, Saudia Arabia, and Pakistan).

Defendant is also correct that Dr. Goher's letter does not address how plaintiff's
medical condition "impedes his ability to participate in this lawsuit in a timely
manner." Order (Feb. 18, 2025). [And plaintiff's other conduct and filings do]
suggest [he] is presently capable of engaging in written discovery.

As the Court previously warned, improper conduct that unnecessarily prolongs
these proceedings would not be tolerated. Significantly, this case was filed in
September 2023 and based on counsels' declarations, plaintiff has not meaningfully
attempted to complete discovery or comply with the Court's orders . . . The Court
is nonetheless mindful of plaintiff's pro se status and has no basis to doubt that he
is currently overseas, which has the possibility to complicate communications and
prevent an in-person deposition in the imminent future. Therefore, the Court
declines to impose the sanction of dismissal at this time, and instead grants plaintiff
one final opportunity to comply with defendant's discovery requests and the
Court's prior orders.

Order 14-16 (doc. 154).

Regarding Dr. Goher's letter, the Court observed it "merely echoes plaintiff's subjective

statements and does not articulate any underlying diagnoses, even though imminent surgery is

purportedly necessary . . . And, despite reviewing thousands of medical records across hundreds

of medical cases, the Court has never seen a medical establishment with an "@gmail.com" email

address, nor heard of an orthopedic surgeon providing primary or cardiac care." *Id.* at 14 n.7. In

fact, the Court agreed with defendant in regard to Dr. Feleke, whose medical identifying

information remains outstanding, that "it is highly improbable that all of Plaintiff's health care

providers in various countries have no contact information other than Gmail, Protonmail, or pm.me

email addresses." *Id.* at 15 n.8.

Accordingly, the Court ordered plaintiff to "serve complete written discovery responses and supplement his Rule 26 disclosures within 60 days," reiterating that:

> that disclosure shall include, but is not limited to: (1) sufficient information related to Nathan Feleke to determine whether he is a licensed medical professional, such as his practice area, place of work, medical license number, etc.; (2) the identities of any other licensed medical providers – such as "Dr. Henok Mekasha" – plaintiff consulted on or after May 26, 2023, and the dates of any such consultations; and (3) whether plaintiff intends to call any licensed psychotherapist (whether treating or non-treating) or other similar expert witness to opine on his emotional injuries at trial, or intends to reveal during his own trial testimony confidential communications with any such professional.

> Finally, plaintiff shall sit for an in-person deposition in Portland, Oregon, on or before June 30, 2025 (barring the submission of additional, properly authenticated medical evidence relating to plaintiff's need for ongoing, overseas medical care). Failure to completely and timely comply with this Order may result in dismissal of this lawsuit with prejudice.

*Id.* at 16-17.

On April 8, plaintiff filed a "Renewed Motion for Protective Order," essentially seeking reconsideration of the remote deposition issue. The Court denied plaintiff's motion, explaining that he "failed to submit additional, properly authenticated medical evidence relating to his need for ongoing, overseas medical care consistent with the Court's prior instructions." Order (Apr. 9, 2025) (doc. 156) (citations and internal quotations omitted).

On April 28, Judge Simon denied plaintiff's second Motion for Interlocutory Appeal.

On April 30, Target properly served an amended notice of deposition on plaintiff to sit for an in-person, videotaped deposition in Portland, Oregon, on June 26, 2025. Mao Decl. ¶ 2 & Ex. 1 (doc. 163).

On May 28, plaintiff filed two additional discovery motions, yet again seeking remote deposition as well as to expand the scope of his on-site inspection based on "newly discovery evidence." Pl.'s Combined Mot. 2 (doc. 159). In support of the latter, plaintiff submitted "cyber-

security" certificates he obtained in regard to certain on-line training courses, all of which were completed on or before May 2023. Jones Decl. ¶ 1 (doc. 159-1); Mao Decl. Ex. 1 (doc. 165-1).

In support of the former, he submitted a second letter from Dr. Goher, dated May 1, 2025. Jones Decl. Ex. A (doc. 158-1). This letter contained a "Care Hospital Lahore" heading along with the following contact information: Dr.ag.ed@proton.me. *Id.* It stated, in relevant part:

> I am Dr. Amin Goher, MBBS, MPH, PMDC No. 51078-P.[5] I am a licensed general practitioner (primary care health) at Care Hospital, Sahiwal, Pakistan. My practice focuses on complex spine, cardiothoracic, and internal medicine comorbidities in rural and expatriate populations. I have treated Mr. Zack Jones continuously since February 2025 . . .
>
> **Current Diagnosis & Status**
> Lumbar Spine Pathology
> -Persistent radicular pain due to multilevel disc herniation (L4-S1) with left sided sciatica.
> -Electromyography reveals chronic nerve root irritation; imaging currently shows a foreign body.
> -Pending L4-L5 micro-decompression and possible instrumented fusion once inflammation subsides.
>
> **Cardiac Concerns**
> -Recurrent chest pain, diminished exercise tolerance, and intermittent dyspnea.
> -Cardiac CT scan suggest the presence of a foreign metallic body adjacent to the right atrium, likely requiring video-assisted thoracic surgery (VATS). The fill cardiothoracic surgical team has tentatively scheduled intervention for early June 2025 (subject to clearance by anesthesiology). This foreign body will be removed .
> . . International travel contraindicated: Mr. Jones must avoid all long-distance or intercontinental flights until at least October 30th, 2025, subject to post-operative cardiology clearance.

*Id.* Dr. Goher's April 2025 letter is signed "Dr. Amin Goher (CONSULTANT)," and lists a number of credentials which remain partially obscured (but do not include "Orthopedic Surgeon"). *Id.*

---

[5] PMDC numbers are issued by the Pakistan Medical and Dental Council, the statutory regulatory and registration authority for medical/dental practitioners in Pakistan. The PMDC maintains a provider look-up portal at: https://pmdcgov.com/. Neither the proffered license number for "Amin Goher" nor his name yield any results via this website,

Defendant once again opposed plaintiff's motions: "This Court has repeatedly ordered Plaintiff to sit for his in-person deposition and conduct the limited inspection it has permitted of the employee breakroom of Target's North Tomahawk Island store (and denied Plaintiff's request that a third party conduct the inspection on his behalf). No factual or legal reason exists for this Court to revisit its previous rulings." Def.'s Resp. Mot. Prot. Order 1-2 (doc. 162).

On June 18, the court held a hearing surrounding the myriad issues raised by plaintiff. That same day, the Court entered an Order specifying:

> Plaintiff's Second Motion for Protective Order is Granted insofar as plaintiff shall appear for his in-person deposition by November 1, 2025. Plaintiff shall supplement his discovery responses by June 25, 2025. Also by June 25, 2025, defendant shall re-produce the list of employees identified at the hearing. Plaintiff's Motion for Discovery and/or Inspection is Denied for the reasons stated on the record. Separately, the Court denotes that plaintiff's "11 years of Cyber Security and computer systems experience" and/or 2022-2023 certificates (obtained prior to the initiation of this lawsuit) do not constitute "newly discovery evidence" that would warrant reconsideration. *See, e.g., Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). Within 30 days following the conclusion of Plaintiff's in-person deposition, the parties shall confer and submit revised proposed case management deadlines.

Order (June 18, 2025) (doc. 167).

On June 30, plaintiff filed objections to the Court's June 18 order, which Judge Simon overruled. Plaintiff then filed another motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (his third), along with an "Emergency Motion for Reasonable Accommodation Under Title II of the ADA and Fed. R. Civ. O. 30(b)(4)," yet again seeking a remote deposition.

On July 11, defendant properly served a videotaped deposition notice for plaintiff set for November 3, 2025, in Portland, Oregon. Falcone Decl. ¶ 5 & Ex. 4 (doc. 197).

On August 11, this Court issued the following order:

> Plaintiff's "Motion for Reasonable Accommodation Under Title II of the ADA and Fed. R. Civ. P. 30(b)(4)" is Denied for three reasons. First, plaintiff failed to comply with LR 7-1(a)(1), despite being specifically and repeatedly instructed that he must

act in accordance with the Local Rules. *See, e.g.*, Mao Decl. para. 2 (doc. 185). Second, the Court has denied plaintiff's myriad requests for a remote deposition and the current filing provides no new information and, by extension, no basis to diverge from those prior rulings. *Cf. United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) ("[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden") (citation and internal quotations omitted). Finally, the sole defendant in this case is a retail store not subject to Title II, and the Court otherwise "lacks jurisdiction to preside over issues pertaining to . . . plaintiff's management of his disability outside of the courthouse." *Brooks v. Agate Resources*, Case No. 6:15-cv-00938-MK, Order 6 (Oct. 16, 2017) (doc. 88); *Desmaine v. Columbia Sportswear Co.*, 2025 WL 554133, *13-14 (D. Or. Jan. 27), *adopted by* 2025 WL 552581 (D. Or. Feb. 18, 2025).

Order (Aug. 11, 2025) (doc. 186). Plaintiff filed objections.

On August 25, Judge Simon denied plaintiff's third motion for interlocutory appeal. On September 30, Judge Simon overruled plaintiff's objections to the Court's August 11 order.

On November 11, defendant notified the Court via email (copying plaintiff) that plaintiff failed to appear for his deposition that was scheduled for November 3. Furthermore, since that time, defendant attempted to contact plaintiff twice at the "email addresses he has used in this case [and on both occasions] received 'bounceback' notifications that [they] were not delivered because 'Recipient mailbox is full.'" Def.'s Email (Nov. 11, 2025).

The Court set a status conference for November 14. Leading up to that conference, defendant made multiple attempts to contact plaintiff via email and certified mail. Falcone Decl. ¶¶ 2-4, 6, 12 & Exs. 1-3 (doc. 197). Plaintiff neither responded nor appeared.

On January 5, 2026, defendant filed the present motion for terminating sanctions. As of the date of this Findings and Recommendation, plaintiff has not filed a response or otherwise opposed that motion In fact, he has not lodged anything in this case since August 21, 2025. Repeated attempts by the Court to contact him electronically and via telephone have been unsuccessful.

## STANDARD

"Federal Rule of Civil Procedure 37(b) authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R. J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1985). Case-dispositive sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Nevertheless, "[o]nly willfullness, bad faith, and fault" justify dismissal of a plaintiff's action as "terminating sanction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (citation and internal quotations omitted).

Courts must consider the following five factors in evaluating whether to impose a case-dispositive sanction under Rule 37: "(1) the public's interest in efficient resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition on the merits; and (5) the availability of less drastic sanctions." *Id.* (citation and internal quotations omitted). However, these factors are not all weighted equally: "the most critical factor is not merely delay or docket management concerns, but truth." *Id.* at 1097. Where one party's conduct "threaten[s] to interfere with the rightful decision of the case [or] so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Id.* (citations and internal quotations omitted).

**DISCUSSION**

Defendant asserts "that terminating sanctions are appropriate in this case" due to plaintiff's "repeated, willful violations of the Federal Rules of Civil Procedure and this Court's orders, including: (1) Failures to appear for his properly noticed and Court-ordered deposition; (2) Failures to provide Rule 26(a) disclosures and court-ordered supplemental discovery; (3) Failures and refusals to meet and confer with Target in advance of motion practice; (4) Misuse of motions practice; and (5) Failure to keep contact information on file with the Court." Def.'s Mot. Sanctions 5 (doc. 196). Alternatively, defendant "requests both issue sanctions and evidentiary sanctions; monetary sanctions awarding it attorneys' fees and costs associated with Plaintiff's non-appearances at deposition and failure to make discovery and respond to Plaintiff's frivolous motion practice; and a final warning from this Court that any further noncompliance with this Court's orders shall result in dismissal of this action with prejudice." *Id.*

## I.    First and Second Factors

With respect to the first two factors, the Ninth Circuit has held the public has an overriding interest in judicial efficiency and that "expeditious resolution of disputes is of great importance to the rule of law . . . delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine Prods. Liability Litig.*, 460 F.3d 1219, 1227 (9th Cir. 2006). Ultimately, "the district courts' power to manage their dockets without being subject to endless non-compliance with case management orders" must be preserved. *Id.* (citation and internal quotations omitted).

This case has been pending since 2023. Since that time, the Court has made repeated efforts to facilitate expeditious and efficient litigation between the parties, as is appropriate considering

plaintiff's pro se status coupled with both the public's and the court's interest in efficient resolution of cases. For instance, the Court ordered conferences to assist the parties in coordinating discovery and other court deadlines, ruled on myriad motions to compel, and gave fair and multiple written warnings to plaintiff explaining that his refusal to act in accordance with the Court's orders and the Federal and Local Rules of Civil Procedure could result in the denial of his motions or dismissal of this action. As discussed above, plaintiff's litigation tactics – including discovery abuses and lack of candor with the tribunal – have unnecessarily delayed this case, such that it has not progressed past the discovery phase.

And, most recently, plaintiff has entirely refused to participate in this litigation including by not responding to opposing counsel's emails, attending scheduled hearings or his properly noticed deposition, or updating his contact information in accordance with LR 83-10. As such, these factors weigh heavily in favor of substantial sanctions.

## II.    Third Factor

"A party's failure to produce documents as ordered is considered sufficient prejudice to support sanctions." *Madsen v. Harris*, 2021 WL 5933119, *2 (D. Or. Nov. 23, 2021) (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). As addressed herein, plaintiff has repeatedly neglected to produce discovery documents and to timely respond; appear in Oregon for an in-person, videotaped deposition; and to comply with the Local Rules governing conferral prior to motion practice and providing up-to-date contact information. In essence, plaintiff's conduct has ground this case to a halt, prejudiced defendant's ability to defend itself, and consumed substantial judicial resources. The third factor also weighs heavily on the side of significant sanctions. *See Adriana Int'l Corp. V. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (the plaintiff's "repeated

failure . . . to appear at scheduled dispositions compounded by their continuing refusal to comply with court-ordered production of documents" constituted prejudice).

## III.    Fourth Factor

"[T]he public policy favoring disposition of cases on their merits strongly counsels against dismissal." *In re Phenylpropanolamine Prods. Litig.*, 460 F.3d at 1228. "At the same time, a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *Id.* As a result, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *Id.* (citation and internal quotations omitted). This factor does not counsel towards a case-dispositive sanction.

## IV.    Fifth Factor

In evaluating the final factor, "[c]ourts should discuss the availability and propriety of lesser sanctions, including whether lesser sanctions had already been imposed and whether the offending party had been warned about the possibility of a case-dispositive sanction." *Madsen*, 2021 WL 5933119 at *2 (citing *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004)). While a court should impose lesser sanctions whenever possible, it is nonetheless "appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Conn. Gen. Life Ins.*, 482 F.3d at 1097 (citation and internal quotations omitted). Repeated failures to comply with discovery requests and court orders shows "the requisite fault . . . fully justifying" case-dispositive sanctions. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

Plaintiff has engaged in willfulness and bad faith. *See Madsen v. Harris*, 2019 WL 260851, *7 (D. Or. Jan. 15, 2019) (finding "bad faith and willful behavior" in regard to a party who failed

to "appear at a hearing," "keep the Court informed of his correct address and phone number," "provide discovery . . . in compliance with Federal Rules of Civil Procedure," and comply with court orders). Separately, as reflected both at hearings and within the record, plaintiff has been insincere surrounding the circumstances underlying his claims and his identity, medical treatment, physical location, and ability to travel. He has filed baseless motions, withheld basic discovery, and relied on "hallucinated" case citations.

And, here, lesser sanctions would seemingly have no effect for three reasons. First, the Court has already taken various steps to require plaintiff's compliance with his discovery obligations and set clear deadlines associated therewith, all of which have been ignored. Thus, as defendant denotes, "[n]one of the Court's (or Target's) efforts has resulted in Plaintiff's compliance with his basic obligations with the Rules." Def.'s Mot. Sanctions 7 (doc. 196).

Second, and relatedly, plaintiff has failed to prosecute his own claims. The Court has afforded plaintiff multiple opportunities to sit for his in-person deposition, granted his extension requests when he claimed he needed more time to comply, and admonished him in writing on his obligations. The Court has also, in lieu of sanctions, explicitly warned plaintiff that continued noncompliance could result in dismissal. *See, e.g.*, Order 17 (Apr. 2, 2025) (doc. 154); Hearing Transcript 40 (June 18, 2025) (doc. 173). Plaintiff has been given chance after chance to appropriately advance his case but has neglected to do so, such that there is no reason to believe at this juncture that the imposition of a lesser sanction would be respected.

Third, plaintiff is proceeding pro se and imposing a monetary and/or evidentiary sanction would seemingly be fatal to his case, especially given that he is proceeding *in forma pauperis* and has not participated in this litigation since August 2025. Order (July 18, 2024) (doc. 70); *see also* Def.'s Mot. Sanctions 21 (doc. 196) ("[t]here is no reason to believe Plaintiff either could heed an

order granting monetary sanctions nor (given his past conduct) would heed such an order [and] issue sanctions would not be efficacious because – given Plaintiff's failure to sit for his deposition or make other, basic discovery – there is no particular issue or set of issues (other than liability) which the Court could adjudicate in Target's favor . . . The evidence he has not produced – such as the identity of the person who allegedly assaulted him in the breakroom – is at the heart of the case").

In sum, plaintiff's failure to participate or seriously engage with litigation and discovery has been a recurring problem in this case. Given the record, the Court has no choice but to conclude that a terminating sanction is now the appropriate, and perhaps only, solution to the problem of plaintiff's misconduct.

## RECOMMENDATION

For the foregoing reasons, defendant's Motion for Terminating Sanctions (doc. 196) should be granted and judgment should be prepared dismissing this case.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right

to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 18th day of February, 2026.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge